IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Donald A. HAHNFELD, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Donald A. HAHNFELD, Respondent.

Supreme Court

*No. 2011AP1570–D.—Decided January 30, 2013.*

2013 WI 14

(Also reported in 826 N.W.2d 47.)

463

464

¶ 1. PER CURIAM. We review the report and recommendation of the referee, Attorney Hannah Dugan, that the license of Attorney Donald A. Hahnfeld to practice law in Wisconsin should be revoked due to his professional misconduct, that Attorney Hahnfeld

should pay a total of $47,200 in restitution to the Lawyers' Fund for Client Protection (the Fund) and to client J.M., and that Attorney Hahnfeld should pay the costs of this disciplinary proceeding, which were $26,988.61 as of August 16, 2012.

¶ 2. After conducting our review of the matter under the established procedures, we accept and adopt the referee's findings of fact set forth later in this opinion and conclude that those findings establish that Attorney Hahnfeld committed the 11 counts of professional misconduct alleged by the Office of Lawyer Regulation (OLR). We agree that the seriousness of Attorney Hahnfeld's misconduct, in light of his prior disciplinary record, warrants the revocation of Attorney Hahnfeld's license to practice law in Wisconsin. Further, we determine that Attorney Hahnfeld should pay the restitution sought by the OLR and should also pay the full costs of this proceeding.

¶ 3. The OLR initiated this disciplinary proceeding with the filing of a formal complaint in July 2011. Attorney Hahnfeld filed an answer, in which he denied or claimed to lack sufficient information to answer many of the allegations of the complaint. The OLR subsequently moved for partial summary judgment on counts 7, 9, 10, and 11. Attorney Hahnfeld did not file a response to the OLR's summary judgment motion. The referee therefore summarily found that the OLR had proven the violations alleged in those counts. After conducting a multi-day evidentiary hearing, the referee issued her final report, in which she found that the OLR had proven the remaining counts alleged in its complaint. Attorney Hahnfeld has not appealed, leading to our review of the referee's report under SCR 22.17(2).[1]

_____

[1] SCR 22.17(2) states:

¶ 4. Attorney Hahnfeld was admitted to the practice of law in Wisconsin in May 1987. He most recently practiced in West Allis. His license is not currently active.

¶ 5. Attorney Hahnfeld has a lengthy disciplinary history. In 1993 he consented to the imposition of a public reprimand due to his failure to exercise reasonable diligence in four divorce cases and a bankruptcy case, as well as his failure to comply with the client's requests for information and to return an unearned fee in the bankruptcy matter. Public Reprimand of Donald A. Hahnfeld, No. 1993–7.

¶ 6. In 2003 Attorney Hahnfeld consented to another public reprimand for continuing to represent a party in a divorce matter while having a conflict of interest and for filing a defamation action for the sole purpose of maliciously injuring the attorney who had disclosed the conflict of interest. Public Reprimand of Donald A. Hahnfeld, No. 2003–7.

¶ 7. This court suspended Attorney Hahnfeld's license to practice law in Wisconsin for the first time in 2007. We imposed a 60–day suspension due to Attorney Hahnfeld's misconduct that included failure to exercise diligence, failure to communicate with his clients, failure to explain the basis of a fee, failure to return a client file, failure to return unearned fees, and failure to respond to investigatory inquiries from the OLR. *In re Disciplinary Proceedings Against Hahnfeld,* 2007 WI 123, 305 Wis. 2d 48, 739 N.W.2d 280. We conditioned the

If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

reinstatement of Attorney Hahnfeld's license upon completing a satisfactory psychological/AODA[2] evaluation.

¶ 8. Attorney Hahnfeld's most recent discipline occurred in 2012, when this court suspended his license for one year and ordered him to pay $6,000 in restitution for harm caused by his misconduct. *In re Disciplinary Proceedings Against Hahnfeld,* 2012 WI 17, 338 Wis. 2d 740, 809 N.W.2d 382. In that proceeding, Attorney Hahnfeld was found to have committed nine counts of professional misconduct, including failing to hold client funds in trust, failing to notify a client of the suspension of his license, failing to refund advance fees and costs upon termination of the representation, continuing to practice law in this state despite the suspension of his license, making multiple misrepresentations to the OLR, and failing to respond in a timely manner to the OLR's requests for information.

¶ 9. The current disciplinary proceeding arises out of Attorney Hahnfeld's representation of two separate clients and his continued practice of law during a period of suspension. The referee made the following findings of fact regarding those subjects.

¶ 10. In April 2001 J.M. paid a flat advance fee of $7,500 to Attorney Hahnfeld for representation in post-judgment divorce proceedings regarding the division of marital property. The circuit court ultimately left those issues unresolved and referred them to a referee for further proceedings, which lasted at least until May 2003.

¶ 11. In March 2002 J.M. paid Attorney Hahnfeld another $30,000 flat advance fee for representation in a civil action. Specifically, J.M. wanted Attorney Hahnfeld to file a new civil action against his ex-wife and their

---

[2] AODA stands for alcohol and other drug abuse.

three sons to recover assets that J.M believed had been either concealed or under-valued during the divorce proceedings before the circuit court and the referee. J.M. disputed the valuation and division of certain business property and equipment that had been connected with a variety of companies that J.M. and his ex-wife had owned during their marriage.

¶ 12. On April 1, 2002, Attorney Hahnfeld drafted a memorandum to an associate attorney in his law firm. The memorandum informed the associate attorney that J.M. had delivered a substantial retainer to the firm, that Attorney Hahnfeld wanted to file the new action requested by J.M. in May or June 2002, that she was to "work up the file," and that she should bill the matter aggressively.

¶ 13. On May 31, 2002, Attorney Hahnfeld received J.M.'s share of a state income tax refund in the amount of $2,184.39, which was part of the property division in the divorce proceeding. Although Attorney Hahnfeld deposited the refund into his client trust account, he failed to notify J.M. of the refund or deliver it to J.M. in a timely manner. On June 23, 2003, Attorney Hahnfeld delivered $1,184.39 to J.M., retaining $1,000 without J.M.'s authorization purportedly as attorney fees for reviewing issues related to the new civil action he was to file on J.M.'s behalf.

¶ 14. On May 15, 2003, the referee in the divorce proceeding issued a check in the amount of $64,263.09 made payable to Attorney Hahnfeld's trust account. This check represented J.M.'s property division settlement. Attorney Hahnfeld failed to notify J.M. in writing of the receipt of these funds or to deliver them promptly to J.M. On June 23, 2003, Attorney Hahnfeld delivered only $42,263.09 to J.M., retaining $22,000 of the funds

without J.M.'s authorization purportedly as additional attorney fees related to the review and preparation of the civil action.

¶ 15. On September 8, 2003, Attorney Hahnfeld received another $5,000 payable to his law firm that represented a maintenance payment to J.M. Attorney Hahnfeld again failed to notify J.M. of the payment and to deliver the funds to J.M. in a timely manner. Indeed, Attorney Hahnfeld retained the entire $5,000 amount without J.M.'s authorization, again as attorney fees purportedly related to the contemplated civil action.

¶ 16. On March 22, 2004, Attorney Hahnfeld filed a civil action on J.M.'s behalf against his ex-wife and their adult sons in Milwaukee County circuit court. Attorney Hahnfeld subsequently failed to appear at a scheduling conference, failed to comply with discovery requests, and failed to file a pre-trial report. As a result, the circuit court dismissed the action with prejudice in October 2005 for failure to prosecute.

¶ 17. On December 11, 2005, J.M. terminated Attorney Hahnfeld's representation and requested a full refund of funds paid to him. Attorney Hahnfeld refused to refund any funds to J.M. The referee specifically found that Attorney Hahnfeld had failed to hold in trust J.M.'s funds that had not been earned as attorney fees and instead converted those funds. In response to J.M.'s request for his complete files, Attorney Hahnfeld had turned over just two boxes of materials.

¶ 18. The referee further found that Attorney Hahnfeld had failed to retain relevant client trust account records for six years following the termination of his representation of J.M.

¶ 19. In February 2006 J.M. filed a legal malpractice action against Attorney Hahnfeld. Pursuant to a June 30, 2006 settlement, Attorney Hahnfeld agreed to

make certain payments over time to J.M. and further agreed that if he failed to comply with the terms of the settlement agreement, J.M. would be entitled to the entry of a judgment against him in the amount of $75,000 (less the amount of any payments already made). Attorney Hahnfeld subsequently defaulted on his obligation to make the specified payments, which led to the entry of a judgment against him in the amount of $62,250.85 on April 1, 2010.

¶ 20. The referee found that J.M. had "paid" a total of $58,000 to Attorney Hahnfeld regarding the second civil action, which represented the initial $30,000 advance "flat" fee, plus the amounts that Attorney Hahnfeld had retained for himself without J.M.'s authorization. The referee further found that Attorney Hahnfeld repaid only $10,800 to J.M. pursuant to the settlement agreement in the legal malpractice action. The difference between the amount "paid" by J.M. and the amount returned by Attorney Hahnfeld is $47,200.

¶ 21. J.M. filed a claim with the Wisconsin Lawyers' Fund for Client Protection (the Fund), in which he sought an award of $58,000. The Fund ultimately granted J.M. an award of $14,400.

¶ 22. J.M. also filed a grievance with the OLR. The OLR formally requested a response to the grievance from Attorney Hahnfeld on November 4, 2009. When Attorney Hahnfeld failed to respond, the OLR sent a second letter requesting a response on December 3, 2009, and personally served a third letter on Attorney Hahnfeld on January 12, 2010. Although Attorney Hahnfeld subsequently promised to provide a written response by February 12, 2010, he did not file a response until February 15, 2010. The OLR referred the matter to a District Committee for further investigation. Attorney

Hahnfeld failed to respond in a timely manner to letters from the District Committee investigator requesting a meeting.

¶ 23. Based on these findings of fact, the referee concluded that the OLR had proven seven counts of professional misconduct by Attorney Hahnfeld. First, Attorney Hahnfeld's failure to file the requested civil action for nearly two years and his failure to prosecute the action after it had been filed, resulting in the dismissal of the action with prejudice, violated SCR 20:1.3.[3] Second, Attorney Hahnfeld violated former SCR 20:1.15(b)[4] on three separate occasions by failing to notify J.M. in writing of Attorney Hahnfeld's receipt of funds in which J.M. had an interest. Third, the referee concluded that by making multiple disbursements to himself from monies belonging to J.M. without authorization from J.M., Attorney Hahnfeld violated the standards set forth by this court in *In re Disciplinary Proceedings Against Marine,* 82 Wis. 2d 602, 610, 264 N.W.2d 285 (1978), which are enforced via SCR 20:8.4(f).[5] Fourth, Attorney Hahnfeld violated SCR

---

[3] SCR 20:1.3 states, "A lawyer shall act with reasonable diligence and promptness in representing a client."

[4] Former SCR 20:1.15(b) (effective through June 30, 2004) stated:

> Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render a full accounting regarding such property.

[5] SCR 20:8.4(f) states it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court

472

20:1.16(d)[6] by failing to refund unearned fees to J.M. upon the termination of the representation. By converting to his own use funds belonging to J.M., Attorney Hahnfeld engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20:8.4(c).[7] Sixth, by failing to maintain client trust account records for at least six years after the termination of his representation of J.M., Attorney Hahnfeld violated SCR 20:1.15(e)(6).[8] Finally, by failing to cooperate with the OLR's investigation on multiple occasions, Attorney Hahnfeld violated SCRs 22.03(2)[9] and

---

order or supreme court decision regulating the conduct of lawyers; . . . ."

[6] SCR 20:1.16(d) states:

> Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

[7] SCR 20:8.4(c) says it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation; . . . ."

[8] SCR 20:1.15(e)(6) (Record retention) provides as follows: "A lawyer shall maintain complete records of trust account funds and other trust property and shall preserve those records for at least 6 years after the date of termination of the representation."

[9] SCR 22.03(2) states:

> Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond.

473

22.04(1),[10] which are enforced via SCR 20:8.4(h).[11]

¶ 24. The second representation at issue in this disciplinary proceeding involves client D.L., who was charged via citation in May 2003 in the Waukesha County circuit court with operating a motor vehicle after revocation, operating a motor vehicle while intoxicated (OWI) (fifth offense), and operating a motor vehicle with a prohibited alcohol concentration with a minor passenger under the age of 16 years in the vehicle (third offense).

¶ 25. D.L. retained Attorney Hahnfeld to represent him regarding the Waukesha County charges. Attorney Hahnfeld was already representing D.L. in a Juneau County case, in which D.L. had been convicted of criminal battery of a police officer.

¶ 26. Attorney Hahnfeld met with D.L. approximately five times regarding the Waukesha County charges, but never discussed D.L.'s legal options, including whether to challenge any of D.L.'s prior OWI convictions. Attorney Hahnfeld advised D.L. to plead guilty to OWI (Fifth Offense) in the Waukesha County

Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

[10] SCR 22.04(1) provides as follows:

The director may refer a matter to a district committee for assistance in the investigation. A respondent has the duty to cooperate specified in SCR 21.15(4) and 22.03(2) in respect to the district committee. The committee may subpoena and compel the production of documents specified in SCR 22.03(8) and 22.42.

[11] SCR 20:8.4(h) says it is professional misconduct for a lawyer to "fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1); . . . ."

action, which was a felony offense at the time. The circuit court's docket record indicates that the other two charges were dismissed. The circuit court subsequently sentenced D.L. on the OWI (Fifth Offense) charge to two years of initial confinement and three years of extended supervision.

¶ 27. Based in part on the expert testimony of a criminal defense lawyer, the referee found that the number of D.L.'s prior OWI convictions had been a significant factor affecting D.L.'s decision to plead guilty and the length of the sentence imposed by the circuit court. The referee further found that Attorney Hahnfeld had failed to investigate or inquire into the circumstances and validity of two previous OWI convictions, which a competent attorney would have discussed with D.L. in order to determine the proper number of prior OWI convictions. The referee found that a collateral challenge to either conviction would have been a competent legal strategy that would have been in accord with D.L.'s goal of minimizing the length of incarceration. The referee further found that Attorney Hahnfeld had failed to consult with D.L. prior to and during D.L.'s plea hearing so that D.L. could enter a knowing, intelligent, and voluntary plea.

¶ 28. In the spring of 2010, D.L.'s successor postconviction/appellate counsel filed a motion for postconviction relief seeking resentencing due to Attorney Hahnfeld's ineffective assistance of counsel in failing to investigate D.L.'s prior OWI convictions. The State subsequently entered into a stipulation providing that D.L. should have been convicted of OWI (Fourth Offense), which was a misdemeanor offense at the time of D.L.'s conviction rather than the felony fifth offense of which he was originally convicted. Pursuant to the stipulation, the circuit court retroactively modified D.L.'s sentence to

one year in the county jail, with credit for time served of more than two years and ten months.

¶ 29. Following the filing of a grievance by D.L., the OLR notified Attorney Hahnfeld on July 22, 2010, that he was required to file a written response within 20 days. Attorney Hahnfeld promised the OLR he would file his written response by August 20, 2010, but he failed to do so. On August 26, 2010, the OLR sent a second letter to Attorney Hahnfeld informing him that he needed to file a response by September 7, 2010. When Attorney Hahnfeld again failed to submit a response, the OLR left a message for him that his response was overdue and that he should contact the OLR. Attorney Hahnfeld did not respond. On October 12, 2010, the OLR filed a motion requesting this court to issue an order directing Attorney Hahnfeld to show cause why his license should not be temporarily suspended due to his willful failure to cooperate with the OLR's investigation. Only after the filing of this motion did Attorney Hahnfeld submit a response to D.L.'s grievance. The OLR then withdrew its motion for a temporary suspension.

¶ 30. The referee concluded that Attorney Hahnfeld had engaged in two counts of professional misconduct related to his representation of D.L. and the OLR's investigation of D.L.'s grievance. First, the referee determined that by failing to adequately investigate, analyze, and discuss D.L.'s prior convictions and his legal options and to present relevant information and argument about those prior convictions to the circuit court, Attorney Hahnfeld had failed to provide competent representation to D.L., in violation of SCR 20:1.1.[12] Further, by failing

---

[12] SCR 20:1.1 provides, "A lawyer shall provide competent representation to a client. Competent representation requires

to respond to D.L.'s grievance and the OLR's letters, Attorney Hahnfeld violated SCR 22.03(2), which is enforced via SCR 20:8.4(f).

¶ 31. The final matter in this proceeding involves Attorney Hahnfeld's practice of law during a period of administrative suspension. Like all active attorneys who practice law in this state, Attorney Hahnfeld was required to report attendance at 30 credit hours of continuing legal education (CLE) every two years. Attorney Hahnfeld failed to report his CLE attendance for his 2008–09 reporting period. On April 8, 2010, the Board of Bar Examiners (BBE) sent a notice to Attorney Hahnfeld advising him of his CLE noncompliance and stating that his license to practice law in Wisconsin would be automatically suspended at 4:30 p.m. on June 7, 2010, unless he complied in all respects with his CLE requirements for the 2008–09 reporting period. The notice further advised Attorney Hahnfeld that it constituted his formal notice of that suspension. The BBE sent that notice via certified mail to the address that Attorney Hahnfeld had provided to the State Bar of Wisconsin. Attorney Hahnfeld did not claim the certified letter despite three attempts by the post office to deliver it.

¶ 32. Attorney Hahnfeld did not comply with his CLE requirements by June 7, 2010, and his license was therefore administratively suspended as of 4:30 p.m. on that date. On June 8, 2010, Attorney Hahnfeld appeared as attorney of record in two separate criminal matters in the Milwaukee County circuit court. On June 11, 2010, Attorney Hahnfeld sought reinstatement from his administrative suspension, but his request was denied because he reported an insufficient

the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

number of CLE credits. On June 23, 2010, he filed an amended petition for reinstatement, which was granted.

¶ 33. Because his reinstatement petition acknowledged that he had engaged in the practice of law during his administrative suspension, the BBE referred the matter to the OLR. On July 22, 2010, the OLR informed Attorney Hahnfeld that he was required to file a response to its investigative inquiry about the unauthorized practice of law within 20 days. On August 16, 2010, Attorney Hahnfeld left a voicemail with the OLR stating that he would be filing a response to another OLR inquiry, but omitting any mention of the investigation of his practicing law while suspended. The OLR sent a letter to him the next day acknowledging receipt of his message and reminding him that he was required to respond by August 23, 2010, to the OLR's inquiry regarding his practice of law while administratively suspended. Attorney Hahnfeld failed to file his response by the due date. The OLR communicated twice more with Attorney Hahnfeld regarding his failure to provide a response to its inquiry. Only after the OLR filed a motion for a temporary suspension of Attorney Hahnfeld's license due to his willful failure to cooperate with its investigation did Attorney Hahnfeld file a response.

██ ██

¶ 34. The referee found that Attorney Hahnfeld had committed two counts of professional misconduct regarding this matter. First, he violated SCR 31.10(1),[13]

---

[13] SCR 31.10(1) states as follows:

If a lawyer fails to comply with the attendance requirement of SCR 31.02, fails to comply with the reporting requirement of SCR 31.03(1), or fails to pay the late fee under SCR 31.03(2), the board shall serve a notice of noncompliance on the lawyer. This notice shall advise the lawyer that the lawyer's state bar membership

which is enforced via SCR 20:8.4(f), by engaging in the practice of law in this state while his license was administratively suspended. Second, by failing to respond to the OLR's investigative inquiry for more than two months after the original due date for a response, Attorney Hahnfeld again violated SCR 22.03(2), enforceable via SCR 20:8.4(h).

¶ 35. The referee's report contained an extensive discussion of the counts of professional misconduct proven by the OLR, Attorney Hahnfeld's prior disciplinary history, his actions in defending against the charges in this disciplinary proceeding, and the proper level of discipline that should be imposed. The referee noted that a number of the counts proven in this proceeding were similar to counts proven in prior disciplinary proceedings. Attorney Hahnfeld's return to the disciplinary process on multiple occasions with the same problems indicated a failure to grasp or adhere to the standards that are required of attorneys practicing in this state and a lack of remorse for his prior ethical violations. The lack of acceptance of responsibility and lack of remorse was also demonstrated by Attorney Hahnfeld's attempts to blame J.M. and his associate attorney for the delay in filing the new civil action. He also claimed that J.M. was withholding documents from

shall be automatically suspended for failing to file evidence of compliance or to pay the late fee within 60 days after service of the notice. The board shall certify the names of all lawyers so suspended under this rule to the clerk of the supreme court, all supreme court justices, all court of appeals and circuit court judges, all circuit court commissioners appointed under SCR 75.02(1) in this state, all circuit court clerks, all juvenile court clerks, all registers in probate, the executive director of the state bar of Wisconsin, the Wisconsin State Public Defender's Office, and the clerks of the federal district courts in Wisconsin. A lawyer shall not engage in the practice of law in Wisconsin while his or her state bar membership is suspended under this rule.

him because he delivered more than two boxes of file documents to J.M. upon termination of the representation. The referee, however, found more credible the testimony of J.M. and his significant other that Attorney Hahnfeld had provided only two boxes of documents that purportedly represented the sum of Attorney Hahnfeld's file on the J.M. representation.

¶ 36. The referee also commented on Attorney Hahnfeld's serious inability to develop and manage a case competently. He took two years to produce a four-page complaint in the J.M. civil action and then failed to appear at court proceedings, to respond to discovery requests, or to otherwise move the case forward properly, resulting in the dismissal of the complaint with prejudice for failure to prosecute. Similarly, Attorney Hahnfeld failed to undertake a review of the prior Ohio or Wisconsin convictions that could have led him to a basis to reduce the seriousness of the 2003 charge against D.L. from a fifth OWI offense (a felony) to a fourth OWI offense (a misdemeanor). Indeed, Attorney Hahnfeld admitted that he did not even seek to obtain documents regarding the Ohio conviction.

¶ 37. The referee stated that Attorney Hahnfeld's inability to represent himself properly in the disciplinary proceeding confirmed the referee's belief that Attorney Hahnfeld lacks an understanding of and proper attitude toward meeting the professional standards imposed on an attorney in this state. In the disciplinary proceeding, Attorney Hahnfeld failed to comply with subpoenas, failed to issue subpoenas to collect records for use at the evidentiary hearing, failed to submit a witness list, failed to present witnesses or exhibits that could refute the OLR's evidence, failed to follow the referee's orders to file briefs on certain issues, and failed even to attend certain scheduled proceedings in this

matter. The referee stated that Attorney Hahnfeld was unprepared for the evidentiary hearing in this matter, including apparently not knowing the elements of some of the counts against him or the standards for determining appropriate sanctions.

¶ 38. Attorney Hahnfeld repeatedly claimed that he could have refuted certain portions of the OLR's case, but that he no longer had the needed case files or other documentation because his computer had "crashed" and the cost of retrieving the computerized files from that "crashed" computer was prohibitive. The referee stated, however, that Attorney Hahnfeld had never provided proof that the recovery of the needed information was cost prohibitive. Attorney Hahnfeld also did not explain why he could not have produced hard copy documents from his files.

¶ 39. The referee stated that there was a dispute in the testimony regarding the financial components of Attorney Hahnfeld's representation of J.M. Attorney Hahnfeld disputed the amount of funds received from J.M. and whether J.M. had authorized Attorney Hahnfeld to retain funds as payments for additional attorney fees. The referee found the testimony of J.M. and his significant other to be more credible, including the testimony that J.M. had never authorized Attorney Hahnfeld to retain client funds as payment for fees and costs. Moreover, the referee rejected Attorney Hahnfeld's unsubstantiated claim that he and his firm had earned the $58,000 he had received from J.M. or had retained from funds belonging to J.M. Thus, the referee found that Attorney Hahnfeld had intentionally failed to hold J.M.'s funds in trust and had instead converted those funds to his own use. Indeed, the referee accepted the testimony of J.M. and his significant other that they did not learn about Attorney

Hahnfeld's receipt of monies belonging to J.M. until they retrieved the two boxes of files from Attorney Hahnfeld's office.

¶ 40. The referee was less concerned with Attorney Hahnfeld's practice of law during his administrative suspension for CLE noncompliance. The referee stated that Attorney Hahnfeld had shown to the OLR that he had relied on the CLE reporting system maintained by the Office of the State Public Defender (SPD), which had erroneously indicated that Attorney Hahnfeld had obtained the proper number of CLE credits. The referee acknowledged that Attorney Hahnfeld's practice of law during his suspension was likely unintended. The referee was nonetheless troubled by Attorney Hahnfeld's response to this charge by the OLR. The referee noted that if Attorney Hahnfeld had accepted the BBE's certified notice, he would have been aware of the BBE's belief that he was not in compliance and of his pending suspension, and he could have taken steps to avoid the suspension. Moreover, if he had provided the SPD information earlier, he might have been able to convince the OLR to omit the charge from its complaint. Finally, although Attorney Hahnfeld apparently had an explanation for his CLE noncompliance, he never bothered to dispute the OLR's summary judgment motion on that charge and instead allowed the referee to grant summary judgment to the OLR. This again demonstrated to the referee Attorney Hahnfeld's failure to competently manage a case.

¶ 41. In summary, given Attorney Hahnfeld's extensive prior disciplinary history, including a pattern of similar misconduct, his lack of appreciation for his wrongdoing or remorse, and his demonstrated inability to handle the basic tasks of competently managing a case or a law practice, the referee concluded that

Attorney Hahnfeld lacked the necessary fitness to be consulted by members of the public and to act as an attorney in matters of trust and confidence. Consequently, the referee recommended that Attorney Hahnfeld's license to practice law in Wisconsin be revoked.

¶ 42. The referee also recommended that Attorney Hahnfeld should be required to pay $47,200 in restitution to J.M. and the Fund. The referee found that Attorney Hahnfeld had received $58,000 from J.M. and his significant other and that J.M. had essentially received no benefit in return because Attorney Hahnfeld took two years to prepare a four-page complaint and then failed to prosecute the case, resulting in the dismissal of the complaint with prejudice. Subtracting the $10,800 that Attorney Hahnfeld paid to J.M. pursuant to the settlement of J.M.'s malpractice action left a balance of $47,200 that Attorney Hahnfeld should have returned to J.M. In light of the Fund's payment to J.M., the referee recommended that Attorney Hahnfeld pay restitution to the Fund in the amount of the $14,400 that it paid to J.M. and also pay restitution directly to J.M. in the amount of $32,800.

¶ 43. Finally, the referee recommended that the court require Attorney Hahnfeld to pay the full costs of this disciplinary proceeding. The referee noted that this court's general policy is to require respondent attorneys who have been found to have committed professional misconduct to pay the costs of the disciplinary proceeding. The referee indicated that Attorney Hahnfeld had provided nothing to suggest that the general rule should not be followed in this case. Moreover, the referee also commented that Attorney Hahnfeld had not asked for waiver of the costs and that his lack of records and his conduct during the proceeding had

needlessly increased the time and expense needed to develop the evidence and present it at trial.

██ ██

¶ 44. Our review of the referee's findings of fact, conclusions of law, and sanction recommendation follows long-established standards. Specifically, we affirm a referee's findings of fact unless they are found to be clearly erroneous, but we review the referee's conclusions of law on a de novo basis. *In re Disciplinary Proceedings Against Inglimo*, 2007 WI 126, ¶ 5, 305 Wis. 2d 71, 740 N.W.2d 125. We determine the appropriate level of discipline given the particular facts of each case, independent of the referee's recommendation, but benefiting from it. *In re Disciplinary Proceedings Against Widule*, 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶ 45. Attorney Hahnfeld has not appealed from the referee's report and recommendation. He has not alleged that the referee's findings of fact are clearly erroneous. We do not discern that any of the referee's findings set forth in this opinion are clearly erroneous, and we adopt them. Further, like the referee, we conclude that those factual findings support the legal conclusion that Attorney Hahnfeld engaged in the 11 counts of professional misconduct alleged in the OLR's complaint.

¶ 46. Turning to the issue of the appropriate level of discipline, we determine that Attorney Hahnfeld's license to practice law in Wisconsin should be revoked. We note that this is the fifth disciplinary proceeding against Attorney Hahnfeld, and that he has now been disciplined for the same types of misconduct on multiple occasions. He has therefore demonstrated that he is unable to conform his conduct to the rules of profes-

sional conduct for attorneys in this state. As the referee noted, even when representing himself in this proceeding with his license status at issue, he failed to perform as a responsible attorney, ignoring the need to develop a defense substantiated by documentary evidence, to appear for court proceedings, and to file briefs, exhibit lists, etc., as requested by the referee. Moreover, of great importance to our determination is the referee's finding that Attorney Hahnfeld took $58,000 of his client's money and produced no benefit for the client. Indeed, he converted $28,000 of his client's money to his own personal uses without his client's knowledge. He has therefore demonstrated that he is not currently fit to hold a license to practice law in this state and to represent members of the public in important legal matters.

¶ 47. We further determine that Attorney Hahnfeld should pay restitution to J.M. and the Fund in the amount of $47,200. While Attorney Hahnfeld and his associate did spend some amount of time on J.M.'s requested civil action, the referee found that J.M. did not receive any real benefit from their time because Attorney Hahnfeld's failure to prosecute the case ultimately led to its dismissal with prejudice. Attorney Hahnfeld has not challenged this determination by the referee nor has he appealed from the referee's restitution recommendation. Thus, we conclude that restitution is appropriate in the amounts requested by the OLR.[14]

[14] The referee recommended that we expressly condition any future reinstatement of Attorney Hahnfeld's license on the timely and satisfactory payment of restitution. It is not necessary for the court to include such a condition in this opinion and order. The rule setting forth the requirements for reinstatement already requires a suspended or revoked attorney seeking reinstatement to allege and prove that the attorney has made

¶ 48. Finally, the referee correctly noted that this court's general policy is to impose the full costs of a disciplinary proceeding upon the respondent attorney whose misconduct necessitated the proceeding. *See* SCR 22.24(1m).[15] We see no reason to depart from that policy in this case. There are no extraordinary circumstances here that would call for a reduction of the costs. The OLR proved each of the 11 counts that it alleged. Further, the referee found that Attorney Hahnfeld's lack of cooperation and preparation caused the OLR and the referee to spend more time on this matter than would otherwise have been necessary. In addition, we note that Attorney Hahnfeld has not objected to the OLR's statement of costs.

¶ 49. IT IS ORDERED that the license of Donald A. Hahnfeld to practice law in Wisconsin is revoked, effective the date of this order.

---

restitution to persons injured or harmed by the attorney's conduct, including the Fund. *See* SCR 22.29(4m).

[15] SCR 22.24(1m) states:

> The court's general policy is that upon a finding of misconduct it is appropriate to impose all costs, including the expenses of counsel for the office of lawyer regulation, upon the respondent. In cases involving extraordinary circumstances the court may, in the exercise of its discretion, reduce the amount of costs imposed upon a respondent. In exercising its discretion regarding the assessment of costs, the court will consider the submissions of the parties and all of the following factors:
>
> (a) The number of counts charged, contested, and proven.
>
> (b) The nature of the misconduct.
>
> (c) The level of discipline sought by the parties and recommended by the referee.
>
> (d) The respondent's cooperation with the disciplinary process.
>
> (e) Prior discipline, if any.
>
> (f) Other relevant circumstances.

¶ 50. IT IS FURTHER ORDERED that within 60 days of the date of this order, Donald A. Hahnfeld shall pay restitution to former client J.M. in the amount of $32,800 and to the Wisconsin Lawyers' Fund for Client Protection in the amount of $14,400.

¶ 51. IT IS FURTHER ORDERED that within 60 days of the date of this order, Donald A. Hahnfeld shall pay to the Office of Lawyer Regulation the costs of this proceeding.

¶ 52. IT IS FURTHER ORDERED that payment of restitution to former client J.M. and to the Wisconsin Lawyers' Fund for Client Protection is to be completed prior to paying costs to the Office of Lawyer Regulation.

¶ 53. IT IS FURTHER ORDERED that Donald A. Hahnfeld shall comply, if he has not already done so, with the requirements of SCR 22.26 pertaining to the duties of a person whose license to practice law in Wisconsin has been revoked.