# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP2350-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Richard W. Steffes, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>          Complainant-Appellant,<br>     v.<br>Richard W. Steffes,<br>          Respondent-Respondent. |

---

DISCIPLINARY PROCEEDINGS AGAINST STEFFES

---

| | |
|---|---|
| OPINION FILED: | December 18, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the Office of Lawyer Regulation, there were briefs by *Matthew J. Price* and *Foley & Lardner LLP*, Milwaukee.

For the respondent-respondent, there was a brief by *Richard W. Steffes* and the *Steffes Law Office*, Beaver Dam.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2012AP2350-D

STATE OF WISCONSIN            :         IN SUPREME COURT

**In the Matter of Disciplinary Proceedings
Against Richard W. Steffes, Attorney at Law:**

**Office of Lawyer Regulation,**

        **Complainant-Appellant,**

    **v.**

**Richard W. Steffes,**

        **Respondent-Respondent.**

**FILED**

**DEC 18, 2014**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding.  *Attorney publicly reprimanded.*

¶1   PER CURIAM.   Pending before the court is a referee's report recommending, inter alia, that Attorney Richard W. Steffes be publicly reprimanded for professional misconduct. The Office of Lawyer Regulation (OLR) appeals from that portion of the referee's report declining to impose a $10,809.57 restitution award as recommended by the OLR and instead recommending that Attorney Steffes pay $1,000 in restitution to the grievant.  The OLR also appeals the referee's recommendation

that Attorney Steffes's law firm trust account be monitored by the OLR for a period of two years. While the OLR agrees with the referee's recommendation that Attorney Steffes attend a trust account rules and compliance course, it argues that six months is a sufficient length of time to monitor Attorney Steffes's trust account compliance.

¶2 The OLR does not appeal the referee's recommended sanction of a public reprimand, as opposed to the two-year suspension originally sought by the OLR, or the imposition of full costs.

¶3 Upon careful review of this matter, we adopt the referee's findings, conclusions, and recommendation for a public reprimand. For the reasons set forth herein, we decline both the OLR's request for restitution to the grievant and the referee's recommended $1,000 restitution award. We agree that Attorney Steffes should be required to attend a trust account rules and compliance course and that his trust account should be monitored by the OLR, but we accept the OLR's argument that six months is a sufficient length of time for such monitoring. We further determine that Attorney Steffes should pay the costs of this proceeding, less the costs of the appeal, totaling $7,805.09 as of November 26, 2013.

¶4 Attorney Steffes was admitted to the practice of law in Wisconsin in May of 1970. He is a sole practitioner, residing and practicing in the Beaver Dam area. Other than a brief administrative suspension several years ago for noncompliance with continuing legal education requirements and a

2

temporary suspension for noncooperation with the OLR in this case, Attorney Steffes has no significant disciplinary history.

¶5 The matter now before the court consists of two parts: (1) Attorney Steffes permitting his non-lawyer son to use his trust account, giving rise to five disciplinary counts, and (2) Attorney Steffes's ensuing failure to cooperate with the OLR when a grievance was filed, giving rise to two counts.

¶6 In 2003, the grievant, R.W., entered into a construction contract with Steffes ICF Construction, LLC (Steffes Construction), owned by Attorney Steffes's son, G.S. G.S. was retained to build an addition to R.W.'s existing home, including construction of a basement and three bedrooms. R.W. gave Steffes Construction five checks totaling $27,228.50 for the work.

¶7 Steffes Construction commenced the work, but never completed it. In 2004, R.W. himself directed suspension of the project due to his then-pending divorce. In 2005, he requested that construction be restarted, but neither G.S. nor any other Steffes Construction representative ever returned to R.W.'s home to perform additional work. Apparently no work was performed on the bedrooms. R.W. also claimed that the inside concrete wall poured against the house ruptured and, when repoured, was defective.

¶8 In 2007, R.W. filed a lawsuit in Dodge County against Steffes Construction, G.S., and another defendant. Attorney Steffes represented his son. During litigation, R.W. and his attorney discovered that the checks R.W. had written to Steffes

3

Construction as advances for the home construction project had been deposited into Attorney Steffes's trust account.

¶9 R.W., through his attorney, requested an accounting of the funds deposited to and disbursed from Attorney Steffes's trust account. Attorney Steffes did not provide an accounting.

¶10 In December 2008, R.W. reported Attorney Steffes to the OLR. Meanwhile, the parties in the Dodge County lawsuit eventually stipulated to entry of a judgment against Steffes Construction in the amount of $9,500.

¶11 In 2011, G.S. filed for Chapter 7 bankruptcy and listed R.W. as one of his creditors. Later that year, G.S. was granted an order discharging his debts.

¶12 Upon receipt of R.W.'s grievance, the OLR's intake staff contacted Attorney Steffes and requested a response by January 9, 2009. On January 9, 2009, Attorney Steffes requested a one-month extension, followed by another extension request on January 29, 2009. Having received no response, the OLR initiated a formal investigation.

¶13 On February 16, 2009, the OLR formally requested that Attorney Steffes respond to R.W.'s grievance by March 11, 2009. Attorney Steffes failed to respond. On April 23, 2009, the OLR again advised Attorney Steffes of his obligation under supreme court rules to comply, this time by May 4, 2009. No response was received.

¶14 On July 1, 2009, the OLR sought a temporary suspension of Attorney Steffes's law license for his failure to cooperate with the OLR's investigation. Attorney Steffes sought and

4

received several extensions to respond to the court's order to show cause, but never filed a response. This court temporarily suspended Attorney Steffes's law license on November 3, 2009. His license was reinstated on January 12, 2010.

¶15 On December 22, 2009, Attorney Steffes finally provided a preliminary response to R.W.'s grievance. In his letter, he admits he allowed his son to use his law firm trust account as a business checking account for Steffes Construction. He acknowledges that R.W.'s payments to Steffes Construction of $27,228.50 were deposited into his law firm's trust account. He claims he traced expenditures related to the R.W. project in excess of $26,000. Attorney Steffes admits he did not notify R.W., in writing, that R.W.'s funds were deposited into his trust account and he did not maintain a separate trust account ledger for R.W.'s funds.

¶16 Attorney Steffes explained that he allowed his son to use his law firm trust account for Steffes Construction because his son was having financial trouble. When his son wanted trust funds issued, Attorney Steffes would provide him with a blank, signed check from the trust account, which his son would complete. His son would subsequently report the name of the payee and the amount to Attorney Steffes and/or his secretary for recording. Attorney Steffes admitted that he "very sporadically" questioned the payees to those trust account checks, even when it was obvious that the checks were not related to construction projects, such as a $7,500 check issued to his son's girlfriend.

¶17 R.W. disputed certain expenses Attorney Steffes claimed were related to the R.W. project. In an effort to resolve the discrepancy, the OLR subpoenaed bank records pertaining to Attorney Steffes's law firm trust account. The OLR's ensuing audit of the bank records showed that only $16,418.93 disbursed from Attorney Steffes's law firm trust account was clearly attributable to the R.W. project. The $10,809.57 discrepancy triggered a series of supplemental requests by the OLR to Attorney Steffes for trust account information and documentation.

¶18 On October 29, 2012, the OLR filed a seven-count disciplinary complaint against Attorney Steffes. The OLR sought a two-year suspension of Attorney Steffes's license to practice law, restitution to R.W. in the amount of $10,809.57, and assessment of costs against Attorney Steffes.

¶19 Attorney Steffes filed an answer, followed by an amended answer. The court appointed Attorney Catherine M. Rottier as referee. She conducted an evidentiary hearing on September 18, 2013, and issued a report on November 8, 2013. Briefly, she concluded that Attorney Steffes had committed three and one-half of the alleged counts of misconduct but declined to find violations of the other three and one-half counts.

¶20 Count One alleged that Attorney Steffes's failure to timely respond to the OLR's requests for information, with such failure resulting in the temporary suspension of his law

6

license, violates Supreme Court Rule (SCR) 22.03(2) and (6),[1] enforced via SCR 20:8.4(h).[2]

¶21 The referee found that the OLR had sustained its burden of proof as to Count One.

¶22 Count Two alleged that Attorney Steffes's failure to notify R.W. of the receipt of funds in his trust account and his

---

[1] SCR 22.03(2) and (6) provide:

(2) Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

. . . .

(6) In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

[2] SCR 20:8.4(h) provides that it is professional misconduct for a lawyer to "fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1)."

failure to render a full accounting upon request violate former SCR 20:1.15(b).[3]

¶23 The referee found that the OLR had sustained its burden of proof as to Count Two.

¶24 Count Three alleged that by allowing his son to utilize client trust account checks to make disbursements from his client trust account and by allowing his son to fill in the payees and the amounts for various disbursements for both personal and business purposes, Attorney Steffes failed to protect client funds on deposit in his client trust account in violation of former SCR 20:1.15(a).[4]  Count Three also alleged

---

[3] Former SCR 20:1.15(b), as in effect prior to July 1, 2004, provided:

> Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render a full accounting regarding such property.

[4] Former SCR 20:1.15(a), as in effect prior to July 1, 2004, provided:

> A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and third persons that is in the lawyer's possession in connection with a representation or when acting in a fiduciary capacity. Funds held in connection with a representation or in a fiduciary capacity include funds held as trustee, agent, guardian, personal representative of an estate, or otherwise. All funds of clients and third persons paid to a lawyer or law

(continued)

that Attorney Steffes engaged in conduct involving fraud, deceit, dishonesty, or misrepresentation in violation of SCR 20:8.4(c).[5]

¶25 The referee found that the OLR had established the first rule violation of Count Three (former SCR 20:1.15(a)) but rejected the more serious allegation that Attorney Steffes engaged in conduct involving fraud, deceit, dishonesty, or misrepresentation (SCR 20:8.4(c)).

_____

firm shall be deposited in one or more identifiable trust accounts as provided in paragraph (c). The trust account shall be maintained in a bank, savings bank, trust company, credit union, savings and loan association or other investment institution authorized to do business and located in Wisconsin. The trust account shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import. No funds belonging to the lawyer or law firm, except funds reasonable sufficient to pay or avoid imposition of account service charges, may be deposited in such an account. Unless the client otherwise directs in writing, securities in bearer form shall be kept by the attorney in a safe deposit box in a bank, savings bank, trust company, credit union, savings and loan association or other investment institution authorized to do business and located in Wisconsin. The safe deposit box shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import. Other property of a client or third person shall be identified as such and appropriately safeguarded. If a lawyer also licensed in another state is entrusted with funds or property in connection with an out-of-state representation, this provision shall not supersede the trust account rules of the other state.

[5] SCR 20:8.4(c) provides that it is professional misconduct to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

¶26 Count Four alleged that by stating to the OLR that he allowed his son to temporarily make deposits to and take disbursements from his client trust account in connection with Steffes Construction during the period of May 1, 2003, until November 4, 2004, when bank records disclosed that deposits and disbursements relating to his son and Steffes Construction were being made to and from his client trust account prior to May 1, 2003, Attorney Steffes violated SCR 22.03(6), enforced via SCR 20:8.4(h).

¶27 The referee determined that the temporal discrepancy disclosed to the OLR was not willful and thus rejected the allegations in Count Four.

¶28 Count Five alleged that by allowing his son to deposit and disburse money to and from his client trust account when he knew his son and his son's business were experiencing financial difficulties which limited his son's abilities to utilize other banks or accounts to conduct his personal and business transactions, and without disclosing the existence of those funds being deposited to and disbursed from his client trust account to other potential creditors or customers of his son or his son's business, Attorney Steffes violated SCR 20:1.2(d)[6] and SCR 20:8.4(c).

---

[6] SCR 20:1.2(d) provides:

A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct

(continued)

¶29 The referee was not persuaded that Attorney Steffes's behavior reflected fraud or deceit and rejected the allegations in Count Five.

¶30 Count Six alleged that by failing to keep complete records of his trust account funds and other trust property, Attorney Steffes violated former SCR 20:1.15(e).[7]

with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.

[7] Former SCR 20:1.15(e), as in effect prior to July 1, 2004, provided:

Complete records of trust account funds and other trust property shall be kept by the lawyer and shall be preserved for a period of at least six years after termination of the representation. Complete records shall include: (i) a cash receipts journal, listing the sources and date of each receipt, (ii) a disbursements journal, listing the date and payee of each disbursement, with all disbursements being paid by check, (iii) a subsidiary ledger containing a separate page for each person or company for whom funds have been received in trust, showing the date and amount of each receipt, the date and amount of each disbursement, and any unexpended balance, (iv) a monthly schedule of the subsidiary ledger, indicating the balance of each client's account at the end of each month, (v) a determination of the cash balance (checkbook balance) at the end of each month, taken from the cash receipts and cash disbursement journals and a reconciliation of the cash balance (checkbook balance) with the balance indicated in the bank statement, and (vi) monthly statements, including canceled checks, vouchers or share drafts, and duplicate deposit slips. A record of all property other than cash which is held in trust for clients or third persons, as required by paragraph (a) hereof, shall also be maintained. All trust account records shall be deemed to have public aspects as related to the lawyer's fitness to practice.

¶31 The referee found that the OLR had met its burden of proof as to Count Six.

¶32 Count Seven alleged that by failing to submit trust account records to the OLR as requested on multiple occasions, including pursuant to an investigative notice to appear, Attorney Steffes violated SCR 20:1.15(f).[8]

---

[8] The referee noted that the supreme court rule cited in the OLR's complaint as to Count Seven appears to be incorrect. In reviewing the matter, we find that SCR 20:1.15(f) as quoted in the complaint was in effect only until July 1, 2004, prior to the time period in which the allegations of Count Seven occurred. For reference, former SCR 20:1.15(f) provided:

Upon request of the office of lawyer regulation, or upon direction of the Supreme Court, the records shall be submitted to the office for its inspection, audit, use, and evidence under such conditions to protect the privilege of clients as the court may provide. The records, or an audit thereof, shall be produced at any disciplinary proceeding involving the attorney wherever material. Failure to produce the records shall constitute unprofessional conduct and grounds for disciplinary action.

The applicable rule in effect during the relevant time period appears to be current SCR 20:1.15(j)(7), which provides:

All fiduciary account records have public aspects related to a lawyer's fitness to practice. Upon request of the office of lawyer regulation, or upon direction of the supreme court, the records shall be submitted to the office of lawyer regulation for its inspection, audit, use, and evidence under any conditions to protect the privilege of clients that the court may provide. The records, or an audit of the records, shall be produced at any disciplinary proceeding involving the lawyer, whenever material. Failure to produce the records constitutes unprofessional conduct and grounds for disciplinary action.

¶33 The referee deemed the allegation in Count Seven duplicative of Count One and declined to find a violation.

¶34 The referee recommends a public reprimand. She explicitly stated in her report that the OLR's recommended two-year suspension "seems entirely too harsh for the circumstances of this case," based on her determination that Attorney Steffes's conduct was careless but not fraudulent. The referee concluded, however, that it was "absolutely clear" that Attorney Steffes did not understand the trust account rules or appreciate their significance. She stated:

> He allowed his client trust account to be used as a <u>de facto</u> bank for his financially compromised son. There is no evidence that respondent benefited personally from allowing his son to make deposits and take withdrawals from the client trust account, but that is no excuse for allowing respondent's client trust account to be used for purposes for which it was never intended.

¶35 The referee also had harsh words for Attorney Steffes's disregard of the OLR's requests for information. She noted that his reference to the OLR's requests as "a bother" is offensive to all attorneys who take their obligations to the OLR seriously.

¶36 To justify the recommended public reprimand, the referee cited as persuasive several cases she deemed relevant, including <u>Public Reprimand of J.E. Nugent</u>, 2010-OLR-3 (attorney had substantial disciplinary history, along with trust account violations, and was guilty of unauthorized practice of law during times when his license was suspended) and <u>Public</u>

13

Reprimand of Ronald J. Thompson, 2012-OLR-18 (attorney used his trust account as a personal account to pay business and personal expenses, commingled funds in the trust account, and failed to keep adequate trust account records; attorney had also practiced law while his license was suspended).

¶37 The referee distinguished the cases cited by the OLR in its trial brief in support of a more severe sanction, noting that each involved more egregious conduct than is at issue here and/or a lawyer with a previous disciplinary history.

¶38 Attorney Steffes made a half-hearted claim that less discipline, namely a private reprimand, is warranted, but he failed to cross-appeal on the question of discipline and we deem his argument undeveloped and unpersuasive.

¶39 In an attorney disciplinary proceeding, a referee's findings of fact are upheld on appeal unless they are clearly erroneous. In re Disciplinary Proceedings Against Hahnfeld, 2013 WI 14, ¶44, 345 Wis. 2d 462, 826 N.W.2d 47. A referee's conclusions of law are reviewed de novo. Id. This court determines discipline independent of the referee's recommendation, based upon the particular facts of each case. Id. And although the court may consider the referee's recommendation as to discipline, it is not entitled to conclusive or great weight. In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶40 The OLR appeals neither the referee's findings and conclusions regarding the alleged counts of misconduct, nor her recommendation for a public reprimand. The record here supports

14

the referee's findings and conclusions and the referee has substantiated her recommendation for a public reprimand. The court therefore accepts and adopts the referee's findings, conclusions, and recommendation for a public reprimand.

¶41 This brings us to the disputed aspects of the referee's report. The OLR challenges on appeal both of the referee's restitution recommendations: (1) the referee rejected the OLR's claim that the grievant, R.W., is entitled to $10,809.57 in restitution, and (2) she recommends that the court award R.W. $1,000 in restitution. The OLR contends that the referee is wrong on both counts.

¶42 The referee was not persuaded that Attorney Steffes should be ordered to reimburse R.W. $10,809.57 for his alleged losses on the construction project. The referee was troubled by what she deemed inconclusive evidence of whether R.W. was ever compensated for his losses in another venue. She found that the evidence at the hearing was not clear as to whether R.W. was paid the settlement amount. She observed further that "[w]hile it is undisputed that [R.W.] did not get the information and accounting to which he was entitled, it is less clear whether he suffered a financial loss as a result." The referee stated:

> [R.W.] testified at the hearing that his lawsuit against respondent's son ended in a settlement. Later, [G.S.] filed bankruptcy, listing [R.W.] as a creditor. Perhaps [R.W.] never received the amount for which he and his attorney decided to settle the Dodge County lawsuit. If that is so, however, it is not clear from the evidence presented.

15

¶43 The referee further stated:

The inadequacy of the evidence makes a restitution award problematic. It is not clear that the trust account machinations made [R.W.'s] financial circumstances worse than they would have been had there been no trust account violations. At bottom, [R.W.] had a claim against [G.S.] which he settled and then may have lost to the bankruptcy, though that conclusion is far from clear.

¶44 The OLR challenges the referee's finding, noting that "Steffes conceded at trial that he had no reason to doubt the attribution of expenses to the [R.W.] project set forth on trust account records OLR subpoenaed from Steffes' bank, which totaled $16,418.93. Accordingly, [R.W.] is due restitution from Steffes of $10,809.57 ($27,228.50 - $16,418.93)."

¶45 While Attorney Steffes himself did not necessarily dispute the OLR's accounting, the referee noted that Attorney Steffes reported that some of his law firm's computer records had been lost, and with them details of client trust account transactions during the relevant period of time. Without specifically stating that she accepted Attorney Steffes's explanation for his inability to account for the trust account discrepancy, the referee did observe that the hearing in this case occurred nearly a full decade after some of the key underlying events occurred, a fact that likely impeded any defense Attorney Steffes might offer.

¶46 The referee was also influenced by the fact that although Attorney Steffes was utterly lacking in understanding of the requirements of the trust account rules, his conduct did

not amount to fraud and she was mindful that he did not personally benefit from the misconduct.

¶47 The OLR maintains that Attorney Steffes should have to reimburse R.W. The OLR contends:

> Once [R.W.'s] funds were deposited into Steffes' law firm trust account, Steffes became obligated to protect them. SCR 20:1.15(d). Steffes' failure to properly safekeep [R.W.'s] project funds subjects Steffes to a claim for restitution to the extent he did not properly protect those funds, independent of any compromise settlement [R.W.] reached regarding those same funds with another party (here, [G.S.]) that may have been subsequently discharged in that other party's bankruptcy or even fully satisfied.

¶48 The OLR cites SCR 20:1.15(d) for the proposition that Attorney Steffes was obligated to protect R.W.'s funds. SCR 20:1.15(d) (as in effect prior to July 1, 2004, when the funds were placed in Attorney Steffes's trust account) provided:

> When, in the representation, a lawyer is in possession of property, in which both the lawyer and another person claim interests, the property shall be treated by the lawyer as trust property until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall continue to be treated as trust property until the dispute is resolved.

¶49 The OLR argues "[t]hat [R.W.'s] claim endures independently from any claims or potential claims [R.W.] asserted or could have asserted against [G.S.] that were subsequently compromised and/or discharged in bankruptcy." The OLR chides Attorney Steffes for "his failure to appreciate [R.W.'s] financial loss."

17

¶50 There is no question that Attorney Steffes violated the trust account rules by allowing his son to use his trust account as a clearing house for his construction business. However, we are not convinced that this ethical failure per se obligates Attorney Steffes to reimburse his son's business client, R.W., for the loss R.W. incurred in his business dealings with G.S. and Steffes Construction. R.W. had a remedy for that loss and indeed availed himself of that remedy: R.W. sought and obtained a civil monetary judgment for $9,500 directly from Steffes Construction.

¶51 We reiterate that Attorney Steffes should not have permitted his son to deposit funds into Attorney Steffes's trust account. This conduct violated the ethics rules and warrants discipline. However, we are not persuaded under the facts of this case that the rules go so far as to require Attorney Steffes to essentially serve as guarantor for funds of his son's business client, R.W. While the court can appreciate that R.W. is aggrieved because he lost over $10,000 due to G.S.'s failure to complete a construction project, it remains true that R.W. obtained a judgment against G.S. in civil court.

¶52 As such, the court agrees with the referee's conclusion that the facts of this case do not adequately establish a basis for granting the full restitution award to R.W. simply because the construction fees improperly passed through Attorney Steffes's trust account. We thus deny the OLR's request for full restitution to the grievant in this matter.

18

¶53 The referee then proposed a $1,000 restitution award to R.W. She said that, "[b]ecause [R.W.] performed a service in filing his grievance and bringing to light the inadequacies of the trust account recordkeeping of respondent's law firm, some payment to [R.W.] may be justified." The referee explained that she made this recommendation because the evidence did not clearly prove his entitlement to a greater award, but some payment to him nonetheless seems "fair and equitable" and would be at least some recompense for Attorney Steffes's failure to provide a timely accounting of trust account funds.

¶54 The OLR opposes this recommendation. It characterizes the proposed $1,000 as a "whistleblower-type" payment. The OLR asserts:

> [D]espite the good intentions of the referee to employ a whistleblower-type payment mechanism to at least nominally compensate [R.W.] when she believed the record failed to support restitution, there is no authority to award payments to a grievant in attorney disciplinary matters other than in the form of restitution to compensate for an actual loss. OLR submits that there is no factual or legal basis for such an award.

¶55 The court agrees with the OLR's assessment of the $1,000 recommended restitution award. The OLR's oft-stated policy is to seek restitution only under the following circumstances: (1) there is a reasonably ascertainable amount; (2) the funds to be restored were in the respondent lawyer's direct control; (3) the funds to be restored do not constitute incidental or consequential damages; and (4) the grievant's or respondent's rights in a collateral proceeding will not likely

be prejudiced. The proposed $1,000 award "for his trouble" is not based on any specific loss and is more akin to incidental damages. The court therefore rejects the $1,000 restitution award recommended by the referee.

¶56 The OLR also challenges the referee's proposal that the OLR monitor Attorney Steffes's law firm trust account for two years.

¶57 The OLR agrees with the referee's recommendation that Attorney Steffes attend a trust account rules and compliance course, as well as the need for some monitoring of Attorney Steffes's trust account. However, the OLR suggests that six months is a sufficient length of time to monitor Attorney Steffes's trust account compliance. The OLR explains:

> Without question, Steffes negligently supervised and managed his law firm trust account. In doing so, he displayed either an ignorance of and/or unabashed disregard for important trust account rules. That said, Steffes admits that he now possesses a far greater understanding of his trust account obligations than he did during the time of the violations charged in this matter[.]

¶58 The OLR adds that it cannot foresee that an additional 18 months of monitoring beyond the six it proposes here would meaningfully improve the likelihood of Attorney Steffes's compliance.

¶59 The court finds the OLR's argument reasonable. The court therefore orders Attorney Steffes to: (a) attend the OLR's next available trust account seminar and pay the related

participation fees, and (b) provide his trust account records to the OLR every two months for a period of six months.

¶60 Finally, Attorney Steffes does not challenge the referee's recommendation that he be required to pay the costs of the underlying disciplinary proceeding. In his appellate brief, however, he asks to be excused from the costs of the appeal.[9] As the OLR, not Attorney Steffes, pursued this appeal and did not prevail on its primary issue pertaining to restitution, we impose upon the respondent the costs of this proceeding, less the appeal costs, a balance of $7,805.09.

¶61 IT IS ORDERED that Richard W. Steffes is publicly reprimanded for his professional misconduct.

¶62 IT IS FURTHER ORDERED that within 60 days of the date of this order, Richard W. Steffes shall pay to the Office of Lawyer Regulation $7,805.09, reflecting the full costs of this proceeding ($9,676.51) less the costs of the appeal ($1,871.42).

¶63 IT IS FURTHER ORDERED that Richard W. Steffes shall attend an Office of Lawyer Regulation trust account seminar at the earliest possible opportunity following the date of this opinion, and shall pay the related participation fees.

¶64 IT IS FURTHER ORDERED that Richard W. Steffes shall provide his trust account records to the Office of Lawyer Regulation every two months over a period of six months,

---

[9] The OLR's amended supplemental statement of costs, filed April 10, 2014, shows total costs of $9,676.51, with $1,871.42 of the total cost contributable to appellate fees and costs.

21

commencing upon the first deposit or disbursement of funds from his trust account following the date of this opinion.

¶65  IT IS FURTHER ORDERED that the director of the Office of Lawyer Regulation shall advise the court if there has not been full compliance with all conditions of this order.